UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
**F I L E D**

SEP 13 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO.   7:05-cv-366-GWU

BEECHER FRAZIER,                                                    PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)—i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Frazier

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d
279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the
Commissioner's decision may be produced through reliance on this expert testimony
only if the hypothetical question given to the expert accurately portrays the plaintiff's
physical and mental impairments.  Varley  v. Secretary of Health and Human
Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Beecher Frazier, was found by an Administrative Law Judge
(ALJ) to have "severe" impairments consisting of osteoarthritis and a chronic lumbar
strain. (Tr. 15). Nevertheless, based in part on the testimony of a vocational expert
(VE), the ALJ determined that Mr. Frazier retained the residual functional capacity
to perform a significant number of jobs existing in the economy and, therefore, was
not entitled to benefits. (Tr. 18-22). The Appeals Council declined to review, and
this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of
the plaintiff's age of 53 or 54 years, high school education, and no transferable work
skills could perform any jobs if he were limited to "medium" level exertion, and also
had the following non-exertional impairments. (Tr. 342). He: (1) could not climb
ladders or scaffolds; (2) could occasionally climb, stoop, kneel, crouch, and crawl;
and (3) could perform "only frequent" overhead work bilaterally and "frequent"

7

operation of foot controls with the right lower extremity. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. The plaintiff's Date Last Insured (DLI) was December 31, 2002 (Tr. 14), meaning that he needed to establish disability prior to that date in order to be entitled to DIB. His SSI application is not affected.

Mr. Frazier alleged disability in his current application because of limitations in his ability to sit, stand, or walk, due to chronic pain in his right hip, right knee, and lower back. (Tr. 153, 330-3). He felt that he was unable to sit for more than 15 to 20 minutes or stand for more than 30 minutes, and his both knee and hip were painful if he did any lifting. (Tr. 332). He could not get up if he squatted or knelt down because of knee stiffness. (Tr. 333). He used a right knee brace several times a week, but not always. (Tr. 334). He also mentioned right shoulder problems, which made it impossible for him to do any work with his arms held straight out. (Tr. 333, 337).

Mr. Frazier testified that he had a seizure disorder, but as of the February, 2005 administrative hearing, he had not had a seizure for about eight years. (Tr.

8

334).[1] He was currently taking Dilantin after his previous medication had been taken off the market in approximately 2001, but Dilantin initially gave him difficulty with concentration, and he was also afraid of having a seizure while driving, so he had given up his job as a truck driving instructor. (Tr. 329, 335).

Medical evidence in the transcript is fairly limited. Mr. Frazier underwent an examination for the renewal of his commercial driver's license in October, 2003, denied all health problems including epilepsy, and the physical examination reportedly showed no abnormalities. (Tr. 239-41).

Notes from the plaintiff's family physicians at Mud Creek Clinic confirmed that he complained of joint pain, and x-rays in March, 2003 showed moderate degenerative spondylosis of the lower segments of the lumbosacral spine and osteoarthritis; the radiologist added "consider the possibility of spinal stenosis." (Tr. 288). A right hip x-ray showed "minimal" osteoarthritis, and a right knee x-ray was negative. (Id.). The plaintiff refused a referral to an orthopedist. (Tr. 278, 286). No functional restrictions were given. He was given samples of the medication Bextra,

---

[1]It is noteworthy that Mr. Frazier gave a variety of different dates to treating sources for his last seizure, including "14 years ago" in March, 2003 (Tr. 289), "one month ago" in August, 2003 (Tr. 272), "about one year ago" in October, 2003 (Tr. 270), and "eight or nine years ago" in January, 2004 (Tr. 266). The ALJ reasonably found the seizure disorder to be a non-severe impairment, in view of these inconsistencies and the fact that one of the treating sources had advised Mr. Frazier in August, 2003 that he could stop taking Dilantin since he was not getting a therapeutic dose in any case. (Tr. 272). However, Mr. Frazier was allowed to continue taking the medication at a low dose of his own volition. (Id.).

but testified at the hearing that that he only took this medication about once a week when he absolutely had to. (Tr. 331).

Dr. Steven Nutter conducted a consultative examination of the plaintiff on September 17, 2003, and reviewed some records including the aforementioned x-rays. (Tr. 252). Mr. Frazier stated that his last seizure had been 15 to 17 years ago. (Tr. 253). Dr. Nutter's examination showed that the plaintiff limped, but did not require a hand-held assistive device, and he appeared to be comfortable in the supine and sitting positions. (Tr. 254). He found pain and tenderness in both shoulders with crepitus, with the right shoulder being worse than the left, along with reduced internal rotation. (Tr. 255). There was crepitus in both knees, and pain and tenderness in the right knee only. (Id.). There might also have been a slight amount laxity on the right knee. (Id.). The lumbosacral spine was tender with no spasm. The plaintiff was noted to complain of pain with range of motion testing, and had trouble getting his shoes and socks off due to back pain. (Id.). Forward flexion was 60 degrees. There was pain and tenderness and reduced flexion in the right hip. However, Mr. Frazier was able to walk on his heels and toes and perform a tandem gait without difficulty, although he had difficulty squatting due to hip and back pain. (Id.). Dr. Nutter concluded that Mr. Frazier's ability to bend, walk, sit, lift, carry heavy objects, and crawl would be at least moderately impaired due to back and joint pain,

that he should avoid climbing ladders or scaffolding, and that he "probably" should minimize jobs that require squatting. (Tr. 257).

State agency physicians who reviewed the record concluded that the plaintiff was capable of medium level work with non-exertional restrictions consistent with the ALJ's hypothetical question. (Tr. 259-63, 308-16).

The plaintiff does not challenge the hypothetical question specifically, but makes the argument that the ALJ failed to consider a third party function report from the plaintiff's wife, citing 20 C.F.R. Section 404.1513(d)(4). This section provides that the ALJ must consider evidence from non-medical sources, such as relatives. The case of Lashley v. Secretary of Health and Human Services, 708 F.2d 1048 (6th Cir. 1983) also holds that "[p]erceptible weight must be given to lay testimony where... it is fully supported by the reports of the treating physicians." Id. at 1054. However, it is not clear how failing to consider this report prejudiced the plaintiff's case. The plaintiff's wife wrote that he mowed the grass "a little" in the summer, watched TV, went to church on Sunday, and went to town once a month for haircut. (Tr. 167). She described no effect on his ability to take care of his personal needs such as dressing and using the toilet (Tr. 168), and that he was able to drive a car (Tr. 170). She indicated essentially the same restrictions that the plaintiff alleged, in that her husband could not sit or stand for more than short periods, or do any squatting, bending, kneeling, or lifting (Tr. 172), and that he used a knee brace

11

when his knee problem flared up and pain became too severe (Tr. 173).  However, she admitted that the knee brace had not been prescribed.  (Id.).  The plaintiff testified to the same types of problems at the administrative hearing, and the medical sources did not indicate any functional restrictions that were inconsistent with the hypothetical question.  The information that the plaintiff could not sit, stand or walk for more than short periods is not supported by the report of a treating, examining, or reviewing physician. The plaintiff acknowledges that the Sixth Circuit also held in Higgs v. Bowen, 880 F.2d 860 (6th Cir. 1988) that the Appeals Council did not commit reversible error by "failing to spell out in its opinion the weight it attached to her and her husband's testimony" in view of the "lengthy discussion of the medical evidence" which made it clear that it did not accept any testimony "at variance with the objective record." Id. at 864.[2] The ALJ in the present case extensively reviewed his reasons for not giving full credibility to the plaintiff. (Tr. 17-18). The Court in Wilson v. Commissioner of Social Security, 378 F.2nd 541 (6th Cir. 2004) it clear that, even when there has been a violation of procedural steps required by regulation (not necessarily established in the present case) a violation can

---

[2]The plaintiff cites a subsequent change in the in the regulation which, he suggests, creates a greater duty for the ALJ to discuss explicitly all the evidence, citing Rules and Regulations, Social Security Administration, 65 Fed. Reg. 39,950 (June 1, 2000). 20 C.F.R. Section 404.1513(d)(4) continues to state that the Commisioner "may" consider evidence from additional non-medical sources, however. Therefore, this Court does not agree with plaintiff's counsel that Higgs is no longer good law.

Frazier

constitute harmless error, where it is <u>de minimis</u> and "a remand would be an idle and

useless formality." <u>Id</u>. at 547 (citation omitted). Such would be the case here.

The decision will be affirmed.

This the ___/3___ day of September, 2006.

G. WIX UNTHANK
SENIOR JUDGE

13